SEAN P. REIS - SBN 184044
(sreis@edelson.com)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON
(jedelson@edelson.com)*
RAFEY S. BALABANIAN
(rbalabanian@edelson.com)*
BENJAMIN H. RICHMAN
(brichman@edelson.com)*
CHANDLER R. GIVENS
(cgivens@edelson.com)*
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Pro hac vice admission to be sought

Attorneys for Plaintiff and the Putative Class

FILED
AUG 31 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

JENNIFER BILODEAU, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MCAFEE, INC., a Delaware corporation, and CAPITAL INTELLECT, INC., a Delaware corporation,

Defendants.

Case No. CV 12-04589 PSG

COMPLAINT FOR:

1. Violations of California's Unfair Competition law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;
2. Fraudulent Inducement;
3. Breach of Express Warranties, Cal. Com. Code § 2313;
4. Breach of Contract; and
5. Breach of the Implied Covenant of Good Faith and Fair Dealing.

DEMAND FOR JURY TRIAL

CLASS ACTION

CLASS ACTION COMPLAINT

Plaintiff Jennifer Bilodeau brings this Class Action Complaint ("Complaint") against Defendants McAfee, Inc. ("McAfee") and Capital Intellect, Inc. ("Capital Intellect") (collectively "Defendants") for their practice of defrauding consumers through the deceptive design and sale of one of their software products. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. Defendant McAfee is one of the best-known developers of computer security software in the world. McAfee markets and sells a variety of products and services, including software that it claims will increase the speed, performance, and stability of a consumer's personal computer ("PC"), remove harmful errors, and increase its Internet performance.

2. Defendant Capital Intellect owns and operates the company Winferno Software. Capital Intellect, through Winferno Software, develops the software at issue in this lawsuit—Registry Power Cleaner.

3. On information and belief, Defendant McAfee has a direct contractual relationship with Defendant Capital Intellect, through which Capital Intellect develops software products and then permits McAfee to endorse, market and sell a variety of those products, including Registry Power Cleaner.

4. Through its online advertisements and descriptions contained on its websites, McAfee represents to consumers that Registry Power Cleaner is capable of identifying, reporting, and repairing a wide range of PC errors and computer problems. McAfee further represents that Registry Power Cleaner increases system startup speeds, optimizes computer performance, protects against frequent computer crashes, and protects users' data.

5. To demonstrate Register Power Cleaner's purported value, Defendants offer consumers the ability to use a free trial version of Registry Power Cleaner, which is supposedly designed to detect the presence of harmful errors and other problems on the user's PC. Once

informed of the errors supposedly detected on their systems through the trial software, Defendants encourage consumers to purchase the full version of Registry Power Cleaner to "fix" their PCs.

6. Defendants take similar, but slightly nuanced approaches in convincing users to purchase the full version of Registry Power Cleaner, depending on the specific channel through which the user downloads the software. McAfee allows consumers to download and use the software free for thirty (30) days, while Capital Intellect allows consumers to directly download the software from its website to perform a free "diagnostic scan"—which supposedly detects any problems on the user's computer. Regardless of the method through which the consumer tries Registry Power Cleaner, the software's scan is functionally identical.

7. The unfortunate truth is that, rather than actually performing any meaningful assessment of a computer's condition, Registry Power Cleaner was designed to invariably—and ominously—report that harmful errors and problems are afflicting a user's PC. As explained more fully herein, Defendants designed and market Registry Power Cleaner to misrepresent and exaggerate the severity of errors and problems reported through the software's diagnostic scan, and to arbitrarily characterize the user's PC Status as being at "High Risk", regardless of the actual status of the computer. This intentional and deceptive programmatic design induces unsuspecting consumers into purchasing the software to ensure that these reported "errors" are fixed.

8. Through the deceptive and unlawful practices described herein, Defendants have deceived potentially thousands of unsuspecting consumers throughout the United States and profited significantly as a result.

**PARTIES**

9. Plaintiff Jennifer Bilodeau is a natural person and citizen of the State of New Jersey.

10. Defendant McAfee, Inc. is a Delaware corporation with its headquarters and principal place of business located at 2821 Mission College Boulevard, Santa Clara, California 95054. Defendant McAfee does business throughout California and the United States.

11. Defendant Capital Intellect, Inc. is a Delaware corporation with its headquarters and

principal place of business located at 179 South Street, Boston, Massachusetts 02111. Defendant Capital Intellect does business throughout California and the United States.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (A) at least one Class member is a citizen of a different state than Defendants, (B) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (C) none of the exceptions under that subsection apply to this action.

13. This Court has personal jurisdiction over Defendants because they conduct business in California and the unlawful conduct alleged in the Complaint, including the misrepresentations made by McAfee, occurred in, was directed to, and/or emanated from California. Additionally, Defendant McAfee is headquartered in Santa Clara, California.

14. Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant McAfee resides in this District and the injuries of which Plaintiff complains arose here and, on information and belief, the relevant operations and business decisions regarding the Registry Power Cleaner software and misrepresentations about the same at issue in this lawsuit emanated from McAfee's corporate headquarters in this District. Venue is additionally proper because Defendants transact significant business in this District, including soliciting consumer business and entering into consumer and business transactions.

## INTRADISTRICT ASSIGNMENT

15. Pursuant to Civil Local Rule 3-2(d), this case shall be assigned to the San Jose Division.

## FACTUAL BACKGROUND

### I. A Brief Overview of McAfee, Inc. and Capital Intellect, Inc.

16. Founded in 1987, Defendant McAfee has become a household name in the development of software designed to protect the security of consumers' computer systems, and is particularly know for its antivirus software products.

CLASS ACTION COMPLAINT 4

17.  In addition to antivirus software, McAfee also markets software, such as Registry Power Cleaner, that it claims will increase the performance of a user's computer, specifically by removing harmful "errors" that lead to PC performance deterioration.

18.  On information and belief, rather than develop the software itself, McAfee chose to contract with Capital Intellect to develop Registry Power Cleaner, and then endorses, markets and sells the product itself.

## II.  Defendants Trick Consumers into Purchasing Registry Power Cleaner Through a Common Deceptive Scheme.

19.  Defendants advertise and promote Registry Power Cleaner across the Internet through sponsored advertisements found on search engines and other webpages, as well as numerous of their own websites.

20.  A consumer using a search engine to locate software to improve the performance or speed of their computer will likely encounter a hyperlink to a webpage offering Registry Power Cleaner along with text substantially similar to the following: "Buy with Confidence…Fix Registry Errors to Maximize & Stabilize Your PC."[1]

21.  On McAfee's website offering Registry Power Cleaner, McAfee specifically represents that the software is designed to perform the following beneficial tasks:

- "Repair[] PC registry errors";
- "Improve [PC] speed";
- "Scan[] for hidden threats"; and
- "Prevent[] frequent crashes".

22.  Defendant McAfee further represents through its website that Registry Power Cleaner will "[s]afely repair harmful registry errors that make your PC unstable" to make the user's PC run "more like the day [they] first bought it!"[2]

---

[1]  McAfee's Registry Power Cleaner webpage, http://home.mcafee.com/store/registry-power-cleaner (last viewed August 15, 2012).

[2]  *Id.*

CLASS ACTION COMPLAINT                    5

23. In order to obtain the purported benefits of Registry Power Cleaner, Defendant McAfee recommends that consumers download the software for "30-day[s]" to conduct diagnostic scans that it claims will detect the issues the product is purportedly designed to fix. Naturally, average consumers reasonably believe that these diagnostic scans will accurately detect and report the types of computer issues described by McAfee in its marketing materials and on its websites (i.e., errors that lead to frequent crashes, slower PC speeds, and threaten system stability).

24. Regardless of the form that they took, the representations Defendant McAfee made to Plaintiff and the proposed Class regarding Registry Power Cleaner's utility were essentially the same: the software will scan the user's PC, accurately report harmful errors and other threats, and ultimately repair such problems.

25. In reality, as explained below, Registry Power Cleaner was designed to *always* detect and report harmful errors, and thus, does not provide the level of utility promised by McAfee.

### III. Capital Intellect Designed Registry Power Cleaner to Invariably Report Harmful Errors to Induce Consumers into Purchasing the Software.

26. Once installed, Registry Power Cleaner directs the user to perform a diagnostic scan of his or her PC. Upon completion of the scan, Registry Power Cleaner displays the number of purported errors detected on the PC underneath a visual representation of a yield sign accompanied by the words "Critical Errors Found."

27. The software also reports the supposed overall condition of the user's PC, ranging from "Low Risk" to "High Risk" and explains that, "Failure to repair registry errors can cause PC errors, crashes, and damage your system."

28. Underneath the software's error reporting mechanism, a button titled "Repair Errors" is displayed along with text that reads "Repair Errors Now to clean and speed up your PC."

29. Despite the ominous nature of these warnings, Registry Power Cleaner's error detection and reporting procedures are simply a façade to frighten consumers into purchasing the full version of the software.

30. Through her attorneys, Plaintiff engaged a computer forensics expert to examine

Registry Power Cleaner. The expert uncovered that Capital Intellect designed Registry Power Cleaner to invariably report, in a uniform manner, that hundreds of harmful computer errors exist on the user's PC, and that the system requires repair because it is at "High Risk", regardless of its actual condition. Indeed, Plaintiff's expert's tests were performed on a brand new virtual computer system, but the software still reported that numerous errors existed on the system. It follows then, that even Registry Power Booster users with new PCs would be informed that hundreds of errors exist on and are harming their system's status, and placing it at "High Risk."

31. Ostensibly these practices lead the average consumer to believe that Registry Power Cleaner is properly performing the operations represented by Defendants, when, in fact, the software does not actually utilize any reliable metrics to diagnose the actual condition of the individual's PC.

32. Irrespective of the particular errors that Registry Power Cleaner represented existed on their computers, Plaintiff and each member of the Class relied upon false representations substantially similar to those identified in Paragraphs 26-28, and rightfully believed that significant errors and/or other problems were negatively impacting their computers' operations. As a result, Plaintiff and the Class members continued using Registry Power Cleaner beyond the free trial and "30-day money back guarantee" period, or purchased the software outright, and were charged by Defendants as a result.

### IV. Defendants are not Alone in their Fraudulent Conduct.

33. Unfortunately for consumers, Defendants are not alone in their use of the sorts of fraudulent programmatic design and marketing practices at issue in this case. Rather, the utility software industry has been fraught with these tactics for over a decade. It is only recently, however, that software developers—like Defendants and their competitors—have been called to account for their profiting on the backs of consumers who are unable to identify the fraudulent technological design and methodologies underlying this type of supposedly performance-enhancing software.

34. Indeed, numerous lawsuits have been filed against well-known competitors of

Defendants (e.g., Symantec Corp. and AVG Technologies)—including several by Plaintiff's counsel here—alleging similar claims related to the fraudulent design and marketing of so-called utility software products. Several of those cases have resulted in classwide settlements and industry-changing modifications to the software products at issue—making their detection, reporting and repairing mechanisms far more transparent and more accurately informing consumers of the threats posed to by existing errors on their computers—and still others are pending.

35. Rather than make the necessary changes to their software so that it *actually* detects, reports and repairs harmful errors and problems on users' PCs, Defendants have remained steadfast in their fraudulent conduct and, to this day, continue to profit from it.

V. **Plaintiff Bilodeau's Experience.**

36. In or around June 2011, Plaintiff Bilodeau began to experience problems with her computer. Specifically, her computer speed drastically decreased and it often froze or shut down without warning.

37. Accordingly, Bilodeau performed an Internet search for software to repair her computer.

38. Bilodeau encountered and clicked on an advertisement by McAfee for Registry Power Cleaner, which directed her to McAfee's website. While on the website, Bilodeau viewed representations about the software's utility.

39. Relying upon the representations made by Defendants—namely, that Registry Power Cleaner would accurately identify, report and repair a variety of computer errors and other problems, enhance the performance, speed, and security of her computer, and perform such beneficial tasks as those described in Paragraphs 20 through 22, Bilodeau downloaded the software.

40. After she installed Registry Power Cleaner, she performed a "scan" of her computer. Registry Power Cleaner informed Bilodeau that her computer was afflicted by hundreds of "Critical Errors," that her computer's "PC Status" was at "High Risk," and that her computer needed to be "repaired."

41. Relying upon McAfee's representations regarding the functionality and utility of Registry Power Cleaner, as well as the software's representations that her computer was in serious need of repair, Bilodeau continued using the software beyond the thirty (30) day trial period and was charged $29.95 by Defendant McAfee as a result.

42. In reality, the errors "detected" by the software did not exist and/or did not pose any actual risk to Plaintiff Bilodeau's computer's condition. Likewise, her "PC Status" was not actually "High Risk," as the software was designed to invariably report such results, without any credible diagnosis. As such, Bilodeau was misled into believing that her computer was at-risk, and that she needed to pay to continue using Registry Power Cleaner in order to repair and/or protect her it from the purported errors and problems.

43. But for McAfee's misrepresentations on its website regarding the utility of Registry Power Cleaner, Plaintiff would not have downloaded, installed, and ran the software on her computer. Similarly, but for the misrepresentations made within Registry Power Cleaner itself—namely, that her computer was damaged by "Critical Errors" and that her "PC Status" was at "High Risk"—Bilodeau would not have agreed to pay the fees charged by McAfee for use of the software beyond the trial period.

44. Additionally, because the full, registered version of Registry Power Cleaner cannot actually perform the level of utility described by McAfee (i.e., it did not perform any credible assessment of her PC, nor truthfully categorize and report "errors"), she purchased a software product that is worth much less than what was reflected in the purchase price she paid.

## CLASS ALLEGATIONS

45. **Class Definition:** Plaintiff Jennifer Bilodeau brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All individuals and entities in the United States and its territories that have paid Defendants a fee for Registry Power Cleaner.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors,

predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

46. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but on information and belief, Defendants have sold their software to thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified through Defendants' records.

47. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

48. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

49. **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members:

    a) whether Defendants have intentionally designed the software to deceive consumers into purchasing their products;

    b) whether Defendants' conduct described herein violates California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

    c) whether Defendants' conduct described herein constitutes fraudulent

          inducement;

    d)    whether Defendants' conduct described herein constitutes a breach of express warranties under the California Commercial Code § 2313;

    e)    whether Defendants' conduct described herein constitutes a breach of contract; and

    f)    whether Defendants' conduct described herein constitutes a breach of the implied covenant of good faith and fair dealing.

50.    **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

51.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with

respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class.

52. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned in discovery.

### FIRST CAUSE OF ACTION
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

53. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

54. California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

55. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition.

56. The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

57. Likewise, the price of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the price of a product is materially misleading.

58. As described herein, Defendants' engaged in fraudulent, unfair, and unlawful business practices as defined by the UCL by, *inter alia*: (i) misrepresenting the utility of the free trial and full registered version of its software to consumers, (ii) misrepresenting the results of diagnostic scans to consumers, (iii) scaring consumers with false scan results for the purpose of tricking them into using and purchasing their software, (iv) breaching its express warranties in

violation of California Commercial Code § 2313, and (v) selling software that lacks the advertised utility.

59. Specifically, Defendants affirmatively represented to Plaintiff that Registry Power Cleaner would honestly and accurately scan her PC for harmful errors and problems, increase her PC's speed and stability, increase the speed of her Internet connection, protect her privacy, and perform beneficial tasks such as those described in Paragraphs 20-22. Further, through the software itself, Defendants affirmatively represented that Plaintiff's PC system status was at "High Risk" and that hundreds of "Critical Errors" existed on her PC.

60. Defendants also violated the UCL's fraudulent prong by intentionally designing Registry Power Cleaner to report fake errors and misrepresent the system status of consumers' computers, and misleadingly market the software's utility with the intent to defraud consumers into purchasing a full version of the software. A reasonable consumer was likely to, as Plaintiff and the Class did, rely on the Defendants' misrepresentations regarding the benefits conferred by Registry Power Cleaner. Moreover, Defendants' misrepresentations were likely to deceive reasonable consumers, and, in fact, did deceive Plaintiff and the Class into purchasing software that lacked the advertised level of utility.

61. Defendants have also violated the UCL's "unfair" prong by causing substantial injury to consumers through the conduct alleged above. The injuries that Defendants' unfair conduct caused are not outweighed by any countervailing benefits to consumers or competition, and could not reasonably have been known by consumers. That is, there is simply no benefit to the public created by designing, marketing and selling software products in a uniformly deceptive manner, and which lack the utility paid for by consumers. And, given the information asymmetry between Defendants and consumers regarding Registry Power Cleaner's functionality, Plaintiff and the Class could not reasonably have known of the falsity of Defendants' representations or avoided the harm those misrepresentations caused.

62. Further, Defendants violated the UCL's "unlawful" prong by breaching their express

CLASS ACTION COMPLAINT                    13

warranties to Plaintiff and the Class, in violation of Cal. Com. Code § 2313, as detailed in Count III below. Defendants' fraudulent marketing practices also violate California's public policies favoring enforcement of such warranties.

63. Defendants' fraudulent, unfair and unlawful conduct occurred during the marketing and sale of computer software products and therefore, occurred in the course of Defendants' business practices.

64. Plaintiff and the Class have suffered harm in the form of actual monetary damages as a direct and proximate result of Defendants' fraudulent, unfair and unlawful conduct.

65. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to engage in the unfair, unlawful, and fraudulent conduct described herein. Plaintiff further seeks an order awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

## SECOND CAUSE OF ACTION
### Fraudulent Inducement
(On Behalf of Plaintiff and the Class)

66. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

67. As described with particularity in paragraphs 16 through 43 and throughout all Counts of this Complaint, Defendants have used, and continue to use, marketing tactics they, as the creators of Registry Power Cleaner, know or reasonably should know are false and misleading.

68. To induce Plaintiff and the Class to purchase Registry Power Cleaner, Defendants affirmatively represented to them that the free trial version and full registered version of their software possessed certain utility. Specifically, Defendants represented that Registry Power Cleaner would honestly and accurately scan their PCs for harmful errors and problems, increase the PCs' speed and stability, and perform beneficial tasks such as those described in Paragraph 20 through 22. Further, through the software itself, Defendants affirmatively represented that Plaintiff's and Class's PCs were at-risk (and in the case of Plaintiff, at "High Risk") and that numerous "Critical

CLASS ACTION COMPLAINT 14

Errors" existed on their computers (hundreds in Plaintiff's experience).

69. The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

70. As the software's developer, Defendant Capital Intellect knew that its representations about Registry Power Cleaner's utility were false. Defendant McAfee knew that its representations about Registry Power Cleaner's utility were false as well when it sponsored, advertised and endorsed Registry Power Cleaner on its website. Defendants intentionally designed their public representations to mislead consumers about the software's utility, and programmed the software to falsely report PC errors and to deceive users about their computers' system conditions.

71. Defendants made their misrepresentations specifically to induce Plaintiff and as many other consumers as possible to purchase Registry Power Cleaner.

72. As consumers lacking the requisite technical expertise to independently gauge the software's underlying functionality, and taking Defendants' statements at face value, Plaintiff and the Class justifiably relied upon Defendants' misrepresentations and would not have purchased Registry Power Cleaner but for the misrepresentations that the software would perform the beneficial tasks advertised.

73. By using false and fraudulent marketing tactics to misrepresent the software's actual utility, and inducing Plaintiff and the Class to purchase the software based on those misrepresentations, Defendants have engaged in fraudulent practices designed to mislead and deceive consumers.

74. As a result of relying on Defendants' misrepresentations, Plaintiff and the other members of the Class have been damaged in the amount of Registry Power Cleaner's purchase price.

75. Plaintiff therefore prays for relief in the amount of the purchase price of Defendants' Registry Power Cleaner. Plaintiff further alleges that Defendants' conduct and misrepresentations

was performed and were made with malice, thereby entitling her and the Class to punitive damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Breach of Express Warranties
### Pursuant to Cal. Comm. Code § 2313
### (On Behalf of Plaintiff and the Class)

76. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

77. Pursuant to California Commercial Code § 2313, Defendants' sale of Registry Power Cleaner included express warranties created by Defendants' affirmations of facts and promises through their advertising, websites, and in-software representations.

78. Defendants' express warranties included affirmations of fact and promises that Registry Power Cleaner would truthfully identify and repair critical PC errors; increase PC speed, performance, and stability; and beneficial tasks such as those described in Paragraph 20 through 22. In actuality, Defendants fraudulently designed both the trial and full version of the software to falsely identify and/or exaggerate the presence of harmful errors and misrepresent the overall status of the PC to deceive consumers into thinking their PC needed repair.

79. Plaintiff and the Class relied upon Defendants' affirmations and promises when purchasing Registry Power Cleaner, and the affirmations formed the basis for the bargain, in that Plaintiff and the Class believed they were purchasing software that would honestly and accurately fix their PCs. But for Defendants' affirmations and promises, Plaintiff and the Class would not have purchased Registry Power Cleaner.

80. Defendants' breached their express warranties because Registry Power Cleaner did not perform any real diagnostic test on Plaintiff's or the Class's PCs. Rather, it artificially and arbitrarily reported harmful computer errors and purportedly low PC system status.

81. Defendants' breaches injured Plaintiff and the Class because they purchased a product of diminished value—software that does not actually perform the beneficial tasks represented to them by Defendants.

82. By serving this Complaint, Plaintiff and the Class hereby give Defendants notice that they have breached their express warranties and request maximum damages as provided for by the California Commercial Code.

### FOURTH CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

83. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

84. Plaintiff and the Class members entered into agreements with Defendants whereby Defendants agreed to sell, and Plaintiff and the Class agreed to purchase, software that would detect and remove legitimate computer errors and problems from Plaintiff's and the Class's PCs.

85. Defendants voluntarily assumed a contractual obligation to honestly diagnose and remove errors and problems such as those described in Paragraphs 20 through 22 on Plaintiff's and the Class's PCs and to honestly indicate whether such errors and problems existed on their PCs. This obligation is a material term of the agreement. Defendants did not honor this obligation.

86. Plaintiff and the Class paid, and Defendants' accepted, Registry Power Cleaner's purchase price, and therefore Plaintiff and the Class performed their obligations under the contracts.

87. Defendants' breached their contracts with Plaintiff and the Class by failing to provide software that could honestly and accurately inform them about the true condition of their computers, and that otherwise failed to offer the level of utility promised by Defendants.

88. The aforementioned breaches of contract have directly and proximately caused Plaintiff and the Class economic injury and other damages, because they purchased a product that does not perform as Defendants' promised, and therefore lacks the promised and paid-for utility. Accordingly, Plaintiff seeks an award of all damages she and the Class incurred as a result of Defendants' breaches.

## FIFTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

89. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

90. In order to benefit from Defendants' supposed PC optimization and threat-removal software products, Plaintiff and the Class affirmatively allowed Defendants to install Registry Power Cleaner on their PCs.

91. Defendants' agreement to install software to diagnose and remove harmful errors and problems from Plaintiff's and the Class's PCs in exchange for fees is a valid and enforceable contract between Plaintiff and the Class on the one hand, and Defendants on the other.

92. Defendants' breached the provisions of the agreement, specifically by not honoring their responsibilities to perform truthful diagnostic and remedial operations.

93. California law recognizes the implied covenant of good faith and fair dealing in every contract.

94. Implicit in the contract were provisions prohibiting Defendants from engaging in conduct that frustrated or injured Plaintiff's and the Class's rights to receive the benefits of the contract.

95. Furthermore, Defendants were obligated to comply with Cal. Com. Code § 2313.

96. Defendants voluntarily assumed a contractual obligation to honestly detect and repair errors and problems on Plaintiff's and the Class's PCs. This obligation is a material term of the agreement. Defendants did not honor this obligation.

97. Defendants' breached the implied covenant of good faith and fair dealing by failing to provide software that could honestly and accurately inform them about the true condition of their computers and that otherwise failed to offer the level of utility promised by Defendants, and further, by failing to fully comply with the proscriptions of applicable statutory law.

98. Defendants' misconduct and breach of the implied covenant of good faith and fair dealing as described herein resulted in injury to Plaintiff and the Class in the form of the price paid

in excess of Registry Power Cleaner's actual utility and/or money conferred on Defendants by Plaintiff and the Class, in exchange for fully functional software, that was knowingly and wrongfully retained by Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jennifer Bilodeau, on behalf of herself and the Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Bilodeau as class representative, and appointing her counsel as class counsel;

B. Declaring that Defendants' actions, as set out above, violate California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and constitute fraudulent inducement, breach of express warranties in violation of Cal. Com. Code § 2313, breach of contract, and breach of the implied covenant of good faith and fair dealing;

C. Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, *inter alia,* an Order: (i) prohibiting Defendants from engaging in the wrongful and unlawful acts described herein, (ii) requiring Defendants to disclose and admit the wrongful and unlawful acts described herein, and (iii) requiring Defendants to fully disclose the true nature of their software products in the future;

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

G. Entering such other injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

H. Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**JENNIFER BILODEAU**, individually and on behalf of all others similarly situated,

Dated: August 31, 2012

By: _____
One of Plaintiff's Attorneys

SEAN P. REIS - SBN 184044
(sreis@edelson.com)
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON
(jedelson@edelson.com)*
RAFEY S. BALABANIAN
(rbalabanian@edelson.com)*
BENJAMIN H. RICHMAN
(brichman@edelson.com)*
CHANDLER R. GIVENS
(cgivens@edelson.com)*
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Pro hac vice* admission to be sought