UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| JENNIFER BILODEAU, individually and on behalf of all others similarly situated | ) ) ) | Case No.: 12-CV-04589-LHK |
| Plaintiff, | ) ) ) | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | ) ) | |
| MCAFEE, INC., and CAPITAL INTELLECT, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

On August 31, 2010, Plaintiff Jennifer Bilodeau ("Plaintiff"), individually and on behalf of all others similarly situated, brought action against Defendants McAfee, Inc. ("McAfee") and Capital Intellect, Inc. ("Capital Intellect"), (collectively, "Defendants"), regarding Plaintiff's purchase of Registry Power Cleaner software ("RPC" or "the software"). Plaintiff alleges that McAfee falsely represents the capabilities of RPC, and that the software falsely reports errors on consumers' computers in an attempt to scare them into using RPC. Plaintiff alleges violations of California's Unfair Competition Law, California Business and Professions Code §§ 17200 *et seq*., California Commercial Code § 2313, and California common law.

McAfee moves to dismiss Plaintiff's complaint. ECF No. 22 ("Mot."). Pursuant to Civil Local Rule 7–1(b), the Court concludes that the currently pending motion is appropriate for determination without oral argument. Having considered the parties' submissions and the relevant

1   law, the Court hereby GRANTS McAfee's motion, and DISMISSES the complaint as against both

2   Defendants.

3   **I.      BACKGROUND**

4      **A.      Factual Background**

5          McAfee, a Delaware corporation with its headquarters and principal place of business in

6   Santa Clara, California, is well-known for its antivirus and computer security software.  Compl.

7   ¶¶ 10, 16.  Additionally, McAfee markets and endorses software such as RPC.  ¶ 17.  RPC is

8   developed by Capital Intellect, a Delaware corporation with its headquarters and principal place of

9   business in Boston, Massachusetts.  *Id.* ¶¶ 11.

10         Plaintiff alleges that in or around June of 2011, her computer experienced a "drastic[]"

11  decrease in speed and frequent freezing or shutting down without warning.  *Id.* ¶ 36.  After

12  conducting an Internet search for software to repair her computer, she encountered and clicked on

13  an advertisement by McAfee for RPC, which directed her to McAfee's website.  *Id.* ¶ 38.  On the

14  website, she allegedly viewed representations about RPC, "namely, that Registry Power Cleaner

15  would accurately identify, report and repair a variety of computer errors and other problems,

16  enhance the performance, speed, and security of her computer, and perform other beneficial tasks .

17  . ."  *Id.* at ¶¶ 20-22; 39.  Plaintiff alleges that, relying on these representations, she downloaded and

18  installed RPC, and performed a "scan" of her computer.  *Id.* ¶ 39.  RPC allegedly reported that

19  Plaintiff's computer was afflicted by hundreds of "Critical Errors," that her computer's "PC Status"

20  was at "High Risk," and that her computer needed to be "repaired."  *Id* .¶ 40.

21         Plaintiff alleges that, relying on both (1) McAfee's representations on its website about the

22  functionality of RPC, and (2) RPC's report that her computer was in need of repair, Plaintiff

23  continued using the software beyond the free 30-day trial period, and was therefore charged $29.95

24  by Defendant McAfee.  *Id.* ¶ 41.

25         Plaintiff further alleges that both of these representations were inaccurate.  First, Plaintiff

26  alleges that McAfee's representation on its website that RPC would accurately report errors was

27  inaccurate, because the software is allegedly designed to invariably report errors, "without any

28  credible diagnosis."  *Id.* ¶ 42.  Specifically, Plaintiff alleges that, through her attorneys, Plaintiff

United States District Court<br/>For the Northern District of California

2

1    engaged a computer forensics expert, who performed tests on "a brand new virtual computer

2    system" and found that RPC "still reported that numerous errors existed on the system." *Id.* ¶ 30.

3    From this, the expert concluded that RPC was designed "to invariably report, in a uniform manner,

4    that hundreds of harmful computer errors exist on the user's PC," and therefore the software "does

5    not actually use any reliable metrics to diagnose the actual condition of the individual's PC." *Id.* ¶

6    31.  Extrapolating from the expert's conclusion, Plaintiff alleges that the errors "detected" by the

7    software on her own computer "did not exist and/or did not pose any actual risk" to her computer.

8    *Id.* ¶ 41.

9          Second, Plaintiff alleges that RPC's allegedly false reports of errors on her computer were

10   not only defects, but also constituted misrepresentations that induced her to keep the software

11   beyond the free-trial period.  *Id.* ¶ 43 ("[B]ut for misrepresentations made within [RPC] itself—

12   namely, that her computer was damaged by 'Critical Errors' and that her 'PC Status' was at 'High

13   Risk'—Plaintiff would not have agreed to pay fees charged by McAfee for use of the software

14   beyond the trial period.").

15         On behalf of herself and others who are similarly situated, Plaintiff seeks damages,

16   including statutory and punitive if applicable, and injunctive relief.

17   **B.    Procedural History**

18         On August 31, 2012, Plaintiff filed the instant class action complaint against McAfee and

19   Capital Intellect.  ECF No. 1. McAfee has filed a motion to dismiss Plaintiff's complaint for: (1)

20   failure to state a claim upon which relief may be granted, pursuant to Federal Rules of Civil

21   Procedure 12(b)(6); (2) failure to plead claims grounded in fraud with sufficient particularity,

22   pursuant to Federal Rules of Civil Procedure 9(b); (3) lack of Article III standing; (4) lack of

23   applicability of California law to claims not based on California conduct; (5) failure to allege actual

24   breach or damages for warranty and contract claims; and (6) failure to plead a separate claim in

25   breach of the implied covenant of good faith and fail dealings.  *See* Def.'s Mot. to Dismiss

26   ("Mot."), ECF No. 22.  McAfee also filed a Request for Judicial Notice.  ECF No. 23.  On January

27   8, 2013, Plaintiff filed an opposition to the motion to dismiss, *see* Pls.' Opp. to Def.'s Mot. to

28   Dismiss ("Opp'n"), ECF No. 29, to which McAfee filed a reply on February 5, 2013, *see* Def.'s

3

1    Reply Supp. Mot. to Dismiss ("Reply"), ECF No. 30.

2         As of May 14, 2013, Defendant Capital Intellect had not been served.  On that date, the

3    Court ordered Plaintiff to show cause why Defendant Capital Intellect should not be dismissed

4    pursuant to Federal Rule of Civil Procedure 4(m), which required Plaintiff to serve Capital Intellect

5    within 120 days after Plaintiff's August 31, 2012 filing of the complaint.  ECF No. 35.  Plaintiff

6    was required to file a response by May 31, 2013, and appear at an Order to Show Cause hearing on

7    June 13, 2013.  *Id.*  On May 31, 2013, Plaintiff filed a response stating that Plaintiff's counsel

8    discovered that Plaintiff's process server had never attempted service on Capital Intellect through

9    its registered agent and requested that the Court grant her leave to attempt service on Capital

10   Intellect via its registered agent on an expedited basis.  ECF No. 36.  The Court granted leave to

11   attempt service of process and required Plaintiff to file proof of service no later than June 6, 2013.

12   ECF No. 37.  On June 6, 2013, Plaintiff filed a proof of service, indicating that Capital Intellect had

13   been served on June 4, 2013.  ECF No. 38.  Because Plaintiff served Capital Intellect, the Order to

14   Show Cause hearing was vacated.

15   **II.    LEGAL STANDARDS**

16        **A.    Standing**

17        A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

18   to Federal Rule of Civil Procedure 12(b)(1).  A Rule 12(b)(1) motion to dismiss tests whether a

19   complaint alleges grounds for federal subject matter jurisdiction.  A motion to dismiss for lack of

20   subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient

21   to establish subject matter jurisdiction.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036,

22   1039 n.2 (9th Cir. 2003).  In considering a Rule 12(b)(1) motion, the Court "is not restricted to the

23   face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve

24   factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d

25   558, 560 (9th Cir. 1988).  If the plaintiff lacks standing under Article III of the U.S. Constitution,

26   then the court lacks subject matter jurisdiction, and the case must be dismissed.  *See Steel Co. v.*

27   *Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).  Once a party has moved to dismiss for

28   lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of

United States District Court
For the Northern District of California

1    establishing the court's jurisdiction.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d

2    1115, 1122 (9th Cir. 2010).

3         **B.      Rule 12(b)(6)**

4              Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

5    action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

6    *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

7    plaintiff pleads factual content that allows the court to draw the reasonable inference that the

8    defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

9    'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

10   unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  For purposes

11   of ruling on a Rule 12(b)(6) motion, "all allegations of material fact are taken as true and construed

12   in the light most favorable to the nonmoving party."  *Johnson v. Lucent Technologies Inc.*, 653

13   F.3d 1000, 1010 (9th Cir. 2011) (amended Aug. 19, 2011); *see also Knievel v. ESPN*, 393 F.3d

14   1068, 1072 (9th Cir. 2005).  Mere "conclusory allegations of law and unwarranted inferences are

15   insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.

16   2004); *accord Iqbal*, 556 U.S. at 678.  Furthermore, "a plaintiff may plead [him]self out of court" if

17   he "plead[s] facts which establish that he cannot prevail on his . . . claim."  *Weisbuch v. Cnty. of*

18   *L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks and citation omitted)

19        **C.      Rule 9(b)**

20             Fraud or mistake claims are subject to the heightened pleading requirements of Federal

21   Rule of Civil Procedure 9(b), which mandates that a plaintiff alleging fraud must "state with

22   particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  *See also Vess v. Ciba-*

23   *Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Kearns v. Ford Motor Co.*, 567 F.3d 1120,

24   1124 (9th Cir. 2009).  To fulfill the heightened standard under Rule 9(b), the allegations must be

25   "specific enough to give defendants notice of the particular misconduct which is alleged to

26   constitute the fraud charged so that they can defend against the charge and not just deny that they

27   have done anything wrong."  *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus, fraud

28   claims must allege "an account of the 'time, place, and specific content of the false representations

*United States District Court*
For the Northern District of California

1    as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d

2    756, 764 (9th Cir. 2007) (per curiam).  The plaintiff must set forth what is false or misleading

3    about a statement, and why it is false." *In re GlenFed, Inc. Securities Litig.*, 42 F.3d 1541, 1548

4    (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Marksman Partners,*

5    *L.P. v. Chantal Pharmaceutical Corp.*, 927 F. Supp. 1297, 1309 (C.D. Cal. 1996).

6              **D.      Leave to Amend**

7              If the Court decides that the complaint should be dismissed, it must then determine whether

8    to grant leave to amend the complaint.  Under Rule 15(a) of the Federal Rules of Civil Procedure,

9    leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying

10   purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

11   technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

12   marks and citation omitted).  Nonetheless, a court "may exercise its discretion to deny leave to

13   amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to

14   cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . ,

15   [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th

16   Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).

17   **III.     Request for Judicial Notice**

18             Defendant has submitted a Request for Judicial Notice, ECF No. 23 ("RJN") for the Court's

19   consideration in ruling on this motion.  Generally, a district court may not consider any material

20   beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim.  *Lee v.*

21   *City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (*overruled on other grounds by Galbraith v.*

22   *County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  However, there are two exceptions to the

23   general rule forbidding consideration of extrinsic evidence on a 12(b)(6) motion.  *Lee*, 250 F.3d at

24   688.  First, a court may take judicial notice of matters of public record outside the pleadings.  *Id.* at

25   689.  Second, a court may consider "material which is properly submitted as part of the complaint."

26   *Id.* at 688 (internal quotation marks omitted).  Such consideration may extend to documents

27   "whose contents are alleged in a complaint and whose authenticity no party questions, but which

28   are not physically attached to the [plaintiff's] pleading." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706

Case No.: 12-CV-04589-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
For the Northern District of California

(9th Cir. 1998) (internal quotation marks omitted), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

McAfee states that the screen shots of McAfee's website that constitute the sole exhibit of the Request for Judicial Notice are the web pages referenced by the Plaintiff. *See* RJN, ECF No. 23, Ex. A. However, there is no indication that these are indeed the pages Plaintiff saw; nor is there reason to believe that McAfee had not changed the appearance of the web pages since Plaintiff's visit in question. These screen shots may be subject to reasonable dispute and are not proper subjects of judicial notice. *See Lee*, 250 F.3d at 688; *Parrino*, 146 F.3d at 706. Moreover, the Court does not find the screen shots necessary to grant McAfee's motion. Similarly, the Court need not rely on the authenticating declaration of Cindia De La Torre attached to the Request for Judicial Notice in granting the instant motion.

## III.    ANALYSIS

Below, the Court first addresses McAfee's two objections to Plaintiff's complaint as a whole: (1) the sufficiency of Plaintiff's standing to bring the instant action pursuant to Rule 12(b)(1), and (2) the particularity of Plaintiff's allegations pursuant to Rule 9(b). For the reasons discussed below, the Court GRANTS, as to all Defendants, McAfee's motion to dismiss under Rule 9(b), with leave to amend, and provides further guidance regarding Defendant McAfee's objections to Plaintiff's specific causes of action.

### A.    Plaintiff Has Alleged Particularized Injury Sufficient For Article III Standing

McAfee disputes whether this Court has jurisdiction over the instant case, contending that Plaintiff lacks Article III standing because she has failed to allege particularized injury. Mot. at 8-9. Although McAfee purports to bring its motion to dismiss only under Rule 12(b)(6) and Rule 9(b), the Court construes McAfee's objection to Plaintiff's Article III standing as a challenge to the Court's subject matter jurisdiction under Rule 12(b)(1). *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (reversing as error a district court's Article III standing analysis under Rule 12(b)(6) rather than Rule 12(b)(1)). The Court finds that Plaintiff has satisfied the Article III standing requirements as interpreted by the Ninth Circuit, and that McAfee's objections to Plaintiff's allegations are more properly addressed as challenges to the merits of the case under

7

*United States District Court*
*For the Northern District of California*

1   Rule 12(b)(6) and Rule 9(b).  *See infra* Part III.B.

2         An Article III federal court must ask whether a plaintiff has standing to sue for the purpose

3   of the "case or controversy" requirement of Article III of the U.S. Constitution.  *See Clapper v.*

4   *Amnesty Int'l*, ---U.S.---, 133 S.Ct. 1138, 1146 (2013) ("'One element of the case-or-controversy

5   requirement' is that plaintiffs 'must establish that they have standing to sue.'") (quoting *Raines v.*

6   *Byrd*, 521 U.S. 811, 818 (1997)).  To satisfy Article III standing, a plaintiff must allege: (1) injury-

7   in-fact that is concrete and particularized, as well as actual and imminent; (2) wherein injury is

8   fairly traceable to the challenged action of the defendant; and (3) injury is likely (not merely

9   speculative) to be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl.*

10  *Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

11  561–62 (1992).  "The party invoking federal jurisdiction bears the burden of establishing these

12  elements."  *Lujan*, 504 U.S. at 561.  However, the Ninth Circuit has emphasized that "[t]he

13  jurisdictional question of standing precedes, and does not require, analysis of the merits."  *Maya v.*

14  *Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

15        McAfee maintains that Plaintiff has failed to satisfy Article III's requirement of

16  "particularized injury" because: (i) Plaintiff does not allege that RPC failed to fix her computer, (ii)

17  Plaintiff does not allege how she knows the errors RPC found did not in fact exist with regards to

18  her computer, and (iii) Plaintiff does not allege that McAfee's misrepresentations had anything to

19  do with RPC's "reporting function" of finding errors.  Mot. 8–9.   Plaintiff responds that the

20  complaint sufficiently alleges that the software failed to perform the beneficial tasks advertised by

21  both McAfee and RPC, and that she suffered economic injury, "in the amount of the software's

22  purchase price, or at least a portion of it."  Opp'n at 9 (citing Compl. ¶¶ 44, 74, 98).

23        Courts considering nearly identical claims brought by Plaintiff's counsel have arrived at

24  varying conclusions with respect to Article III standing.  For example, in *Gross v. Symantec Corp.*,

25  neither party challenged the plaintiff's standing, and the Court did not address the issue *sua sponte*,

26  but rather implicitly affirmed its own jurisdiction by ruling on a motion to dismiss.  No. 12-00154,

27  2012 WL 3116158 (N.D. Cal. July 31, 2012).  In another case brought by Plaintiff's counsel,

28  *Parker v. Iolo Technologies, LLC*, the Court granted the defendant's 12(b)(1) motion to dismiss,

United States District Court
For the Northern District of California

8

Case No.: 12-CV-04589-LHK
ORDER GRANTING MOTION TO DISMISS

finding the plaintiff in that case lacked standing because he did not "plausibly allege that *he* suffered from [the] deficiencies of the software. That is, he does not allege facts supporting a plausible claim that the software erroneously diagnosed the condition of his computer . . ." No. 12-00984, 2012 WL 4168837, at *4 (C.D. Cal. Aug. 20, 2012) (citing both *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009), and *In re iPhone Application Litig.*, No. 11-02250, 2011 WL 4403963, at *3-5 (N.D. Cal. Sept. 20, 2011)). By contrast, in *Kulesa v. PC Cleaner, Inc.*, also brought by current Plaintiff's counsel in this case, the Court found that, although "concerned about the sparse nature of Plaintiff's claims," the plaintiff's allegation that "she overpaid for a product that did not work as advertised and thus was deprived of the benefit of the bargain suffices to establish standing." No. 12-00725, ECF No. 49, at 6-7 (citing both *In re Toyota Motor Corp. Unintended Acceleration Mktgs., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1164 (C.D. Cal. 2010) ("As long as plaintiffs allege a legally cognizable loss under the 'benefit of the bargain' or some other legal theory, they have standing."), and *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595 (9th Cir. 2012)).

In this case, Plaintiff's complaint does allege the following injuries caused by Defendants:

> But for McAfee's misrepresentations on its website regarding the utility of [RPC], Plaintiff would not have downloaded, installed, and ran [sic] the software on her computer. Similarly, but for the misrepresentations made within [RPC] itself—namely, that her computer was damaged by "Critical Errors" and that her "PC Status" was at "High Risk"—Bilodeau would not have agreed to pay the fees charged by McAfee for use of the software.
> Additionally, because the full, registered version of [RPC] cannot actually perform the level of utility described by McAfee (i.e. it did not perform any credible assessment of her PC, nor truthfully categorize and report "errors"), she purchased a software product that is worth much less than what was reflected in the purchase price she paid.

Compl. at ¶¶ 43-44. In light of the Ninth Circuit's admonition that the standing inquiry must precede an inquiry into the merits of the case, the Court joins the *Kulesa* Court, and finds that Plaintiff's allegation of a lost "benefit of the bargain" is sufficient to establish a concrete injury for the purposes of Article III standing. Specifically, because Plaintiff alleges that she "purchased a software product that is worth much less than what was reflected in the purchase price she paid" as a result of Defendants' respective misrepresentations, on its face, the complaint sufficiently alleges

9

United States District Court
For the Northern District of California

a concrete and particularized injury. *C.f.*, *Brazil v. Dole Food Co., Inc.,* No. 12-01831, 2013 WL 1209955, at *13 (N.D. Cal. Mar. 25, 2013) ("Assuming all of the factual allegations alleged in the FAC to be true, the Court must accept that [Plaintiff] suffered a concrete and particularized injury based on the fact that he allegedly was deceived, and then paid money that he would not otherwise have paid had he known about the true nature of Defendants' products."). Accordingly, McAfee's motion to dismiss for lack of standing is DENIED.

### B.    Plaintiff's Complaint Fails to Satisfy the Heightened Pleading Requirements of Federal Rule of Civil Procedure 9(b)

Plaintiff does not dispute McAfee's contention that all of Plaintiff's claims sound in fraud and are thus subject to Rule 9(b). *See* Reply at 5. Because each of Plaintiff's causes of action is based on RPC's alleged misrepresentations of registry errors, each of Plaintiff's allegations against McAfee "rely on a unified fraudulent course of conduct," and thus all the claims are "grounded in fraud . . . [and] as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess,* 317 F.3d at 1006; *Kearns,* 567 F.3d at 1125. *See also Janney v. Mills*, No. 12-3919, 2013 WL 1962360 (N.D. Cal. May 10, 2013) ("[W]here the claim is that the defendant made false statements for financial gain, the complaint is grounded in fraud.") (citing *Kearns,* 567 F.3d at 1125).

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged," *Kearns*, 567 F.3d at 1124, as well as the circumstances indicating fraudulent conduct, *Vess,* 317 F.3d at 1106; *Mazur v. eBay, Inc.,* 2008 WL 618988, *13 (N.D. Cal. Mar. 4, 2008). To satisfy the Rule 9(b) standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Below, the Court applies this standard both to Plaintiff's allegations regarding the representations on McAfee's website, and to Plaintiff's allegations regarding RPC's false reporting on Plaintiff's own computer.

### 1.    McAfee's Website's Alleged Representations of RPC's Capacity

Plaintiff's first theory of liability alleges that McAfee's website misrepresented the capacities of RPC. However, the complaint fails to provide the Court with sufficient information

Case No.: 12-CV-04589-LHK
ORDER GRANTING MOTION TO DISMISS

*United States District Court*
For the Northern District of California

1    about the "who," or the "what" of these allegations.

2           First, the complaint fails to distinguish between representations made by McAfee and

3    representations made by Capital Intellect.  Specifically, the complaint alleges that Plaintiff

4    downloaded the software "[r]elying upon the representations made by Defendants," Compl. ¶ 40,

5    without making explicit which Defendant made which representations.  The identification of

6    "who" allegedly made the various representations is essential to determining the respective liability

7    of the two defendants.  *See Kearns*, 567 F.3d at 1124.

8           Second, and more importantly, the complaint paraphrases the allegedly false representations

9    made by Defendants without citation, failing to provide the specificity that would be required to

10   put Defendants on notice, or to permit the Court to evaluate the validity of Plaintiff's fraud claim.

11   The complaint does provide direct quotations from McAfee's Registry Power Cleaner website, as

12   viewed on August 15, 2012, representing that RPC will "[r]epair[] PC registry errors"; "[i]mprove

13   [PC] speed"; "[s]can[] for hidden threats"; and "[p]revent[] frequent crashes," *id.* ¶ 21, and

14   "[s]afely repair harmful registry errors that make your PC unstable," *id.* ¶ 22.  However, Plaintiff

15   also alleges that Defendants represented that RPC would "accurately identify, report and repair a

16   variety of computer errors," Compl. ¶ 40, without attributing these representations to any specific

17   Defendant at any specific time.  Plaintiff further makes the concededly general allegation that,

18   "[r]egardless of the form that they took, the representations Defendant McAfee made to Plaintiff

19   and the proposed Class regarding [RPC]'s utility were essentially the same: the software will scan

20   the user's PC, accurately report harmful errors and other threats, and ultimately repair such

21   problems."  Compl. ¶ 24.

22          Under Rule 9(b), the Court cannot evaluate Defendants' representations "[r]egardless of the

23   form they took."  Compl. ¶ 40.  McAfee contends that it only represented that the software would

24   repair, improve speed, scan for hidden threats, and prevent frequent crashes, and did not represent

25   that RPC would accurately report errors.  Mot. at 2.  McAfee notes that none of the specific

26   marketing statements quoted in the complaint from McAfee's website concern the reporting

27   function of the software.  Mot. at 2.  Although McAfee and Plaintiff dispute the distinction

28   between the software's scanning and reporting functions, *see* Mot. at 7-8, Opp'n at 7-8,  neither

United States District Court
For the Northern District of California

11

1    Defendants nor the Court can sufficiently evaluate Plaintiff's claims without clarity in the

2    complaint as to what exactly was represented by whom.  *See Kearns*, 567 F.3d at 1126 (finding a

3    complaint failed to satisfy Rule 9(b) in part because it failed to "specify what [allegedly

4    misleading] television advertisements or other sales material specifically stated.").

5            The generalized nature of Plaintiff's allegations parallel the complaints filed in a number of

6    lawsuits brought by Plaintiff's counsel around the same time against various manufacturers of

7    computer scan software.  Each suit alleges that Plaintiff's counsel "hired a computer forensic

8    expert who determined that the software falsely reports problems with the user's computer; that the

9    marketing materials for the software promise that it accurately scans the computer and fixes

10   various problems, but instead the software misrepresents the health of the computer and does not

11   improve its performance; and that the class members purchased the software in reliance on the

12   defendant's false advertising."  *Parker v. Iolo Technologies LLC*, 12-00984, 2012 WL 4168837, at

13   *2 (C.D. Cal. Aug. 20, 2012) (noting that many allegations had been "copied and pasted" between

14   the complaint in that action and the complaints in *Batchelor v. Aol Inc.,* No. 12-00963 (S.D.N.Y.

15   Feb. 6, 2012); *LaGarde v. Support.com, Inc.,* No. 12–0609 JSC (N.D. Cal. Feb. 7, 2012); *Gross v.

16   Symantec Corp.,* No. 12-00154 (N.D. Cal. Jan. 10, 2012)).  *See also Kulesa v. PC Cleaners, Inc.*,

17   12-00725, ECF. No. 1 (C.D. Cal. October 12, 2012) (complaint filed with nearly identical

18   language).[1]

19           Other courts have dismissed Plaintiff's counsel's similar complaints on analogous Rule 9(b)

20   grounds.  Specifically, in another parallel case within this district, *Gross v. Symantec Corp.*, the

21   complaint alleged representations by Symantec that directly parallel those in the instant case.  No.

22   12-00154, 2012 WL 3116158, at *4 (N.D. Cal. July 31, 2012) (citing language from the first

23   amended complaint in that action that "Symantec represents to the consumer that [the software at

24

25   _____

     [1]  The plausibility and specificity failings addressed in this Order are only magnified by the fact
26   that the complaint is substantially similar to those filed by Plaintiff's counsel in several other cases.
     This Court joins others that have cautioned Plaintiff's counsel that "the copying and pasting of
27   claims from one complaint to another is disfavored and undermines the claims for relief."  *Parker
     v. Iolo Technologies LLC*, 12-00984, 2012 WL 4168837, at *2 n.1 (C.D. Cal. Aug. 20, 2012)
28   (citing *Camillo v. City of Maywood*, No. 07-3469, 2008 WL 4056994, at *8 (C.D. Cal. Aug. 27,
     2008)).

Case No.: 12-CV-04589-LHK
ORDER GRANTING MOTION TO DISMISS

United States District Court
For the Northern District of California

1    issue] is capable of identifying and fixing a wide range of PC errors, privacy threats and other

2    computer problems," and that "Symantec affirmatively represented to Plaintiff that [the software]

3    would honestly and accurately scan his computer for harmful problems, repair those problems,

4    increase the speed and stability of his computer, and protect his privacy") (internal quotations

5    omitted).  The *Gross* Court found that these allegations were "too vague to be actionable in federal

6    court." *Id.* at * 5.  The *Gross* Court relied on *Wenger v. Lumisys, Inc.*, another Northern District

7    case that applied Rule 9(b) in the context of alleged false and misleading statements that allegedly

8    were intended to artificially inflate the post-IPO price of Lumisys stock.  2 F. Supp. 2d 1231, 1246

9    (N.D. Cal. 1998)).  The *Lumisys* Court demanded direct quotations, finding that "vague,"

10   "impressionistic" and "repackage[d]" statements did not provide sufficient information as to what

11   defendants "*actually* said."  2 F. Supp. 2d at 1246-47.

12        As noted in *Gross*, this Court has found that Rule 9(b) can be satisfied without direct

13   quotations, provided that the complaint's allegations are sufficiently specific.  *See Gross*, 2012 WL

14   3116158, at * 4 n.6 (citing *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, *order vacated

15   in part on other grounds*, 771 F. Supp. 2d 1156 (N.D. Cal. 2011)).  Indeed, this Court in *Kowalsky*

16   found a complaint sufficiently precise and specific which alleged, without quotation, that defendant

17   HP had represented that "the HP 8500 Printer was able to scan and copy at speeds of up to 34

18   pages per minute in color, and 35 pages per minute in black and white via the 50–page capacity

19   ADF." *Kowalsky*, 771 F. Supp. 2d at 1143.  However, in the instant case, Plaintiff's general,

20   uncited allegations that Defendants represented that RPC would "accurately report harmful errors,"

21   Compl. ¶ 24, or "accurately identify, report and repair a variety of computer errors and other

22   problems," Compl. ¶ 40, are a far cry from the level of concrete, technical specificity in *Kowalsky*.

23   In the instant case, as in *Gross*, "Plaintiff's entire suit turns on how [Defendants'] representations

24   compare to the actual functionality of [the] software," and the lack of specificity regarding what

25   representations each Defendant actually made is therefore "fatal to all Plaintiff's claims because the

26   same allegations of fraudulent conduct support each claim." *Gross*, 2012 WL 3116158, at * 5.

27   Accordingly, the Court finds that Plaintiff's allegations regarding misrepresentations on McAfee's

28   website fail to satisfy the requirements of Rule 9(b).

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.    RPC's Alleged Misrepresentations on Plaintiff's Computer

Plaintiff's second theory of liability alleges that RPC, itself, made misrepresentations by falsely reporting errors that do not in fact exist.  Specifically, Plaintiff alleges:

> Through her attorneys, Plaintiff engaged a computer forensics expert to examine Registry Power Cleaner.  The expert uncovered that Capital Intellect designed Registry Power Cleaner to invariably report, in a uniform manner, that hundreds of harmful computer errors exist on the user's PC, and that the system requires repair because it is at "High Risk", regardless of its actual condition.  Indeed, Plaintiff's expert's tests were performed on a brand new virtual computer system, but the software still reported that numerous errors existed on the system.

Compl. ¶ 30.[2]

This generic allegation fails to allege when the unidentified "forensics expert" examined RPC or what errors the software allegedly reported.  The allegation also fails to specify whether the expert found that RPC reported errors existing even after it performed its repair function.

Moreover, even if the allegation that the software over-reports errors on new computers was sufficiently particular for the purposes of Rule 9(b), Plaintiff fails to link it to her personal experience with RPC.  Plaintiff's allegations regarding her own personal use of RPC consist of a statement that RPC "informed Bilodeau that her computer was afflicted by hundreds of 'Critical Errors,' that her computer's 'PC Status' was at 'High Risk,' and that her computer needed to be 'repaired.'"  Compl. ¶ 40.  Plaintiff then concludes:

> [T]he errors 'detected' by the software did not exist and/or did not pose any actual risk to Plaintiff Bilodeau's computer condition.  Likewise, her 'PC Status' was not actually 'High Risk,' as the software was designed to invariably report such results, without any credible diagnosis.

Compl. ¶ 42.

Considering the same lack of particularity in a parallel suit, the *Kulesa* Order concluded that Plaintiff's complaint provided "general notice rather than specific notice of the particular

---

[2] This allegation is nearly identical to those in complaints in Plaintiff's counsel's other lawsuits regarding different antivirus software.  *See Parker*, 2012 WL 4168837, at *3 & n.1 (noting the complaint in that action and three others all alleged that the plaintiff "engaged a computer forensic expert to examine the software, and that '[t]he expert uncovered that Defendants deceptively designed [the software] to invariably report, in a . . . menacing manner," that the computer is experiencing various status, security, and privacy problems, without any 'credible' or 'meaningful' diagnosis of the system's condition.").

14

1    misconduct that constitutes the fraud charged, inhibiting [defendant's] ability to prepare and [sic]

2    adequate response." *Kulesa*, No. 8:12-CV-00725, ECF. No. 49, at 11 (citing *Moore v. Kayport*

3    *Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)).  Similarly, in this case, Plaintiff has not

4    alleged what errors were reported, or whether the reported errors were non-existent or merely

5    harmless.  Rather, she makes the logical leap that because RPC allegedly reported false positives

6    on a new virtual computer, the reported errors on her computer either did not exist or did not pose a

7    risk.  However, by her own admission, Plaintiff's computer malfunctioned prior to seeing

8    McAfee's ad or using RPC, *id.* ¶36, undermining the proposition that Plaintiff's computer was

9    error free.  Plaintiff does not indicate that any expert ever examined *her* computer to determine

10   whether the reported errors were in fact false.  Nor does she indicate whether RPC fixed the

11   reported errors on her computer, or whether RPC continued to provide false reports of errors after

12   RPC performed its purported cleaning and repairing functions.  In light of this cumulative lack of

13   specificity, the Court finds that Plaintiff's allegations fail to "give defendants notice of the

14   particular misconduct which is alleged to constitute the fraud charge[s]."  *Semegen*, 780 F.2d at

15   731.

16        The Court notes that the lack of specificity in the complaint also raises concerns under the

17   plausibility requirements of Rule 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A

18   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

19   the reasonable inference that the defendant is liable for the misconduct alleged.") (internal citation

20   omitted).  Indeed, at least one other court considering a parallel pleading in another similar case

21   brought by Plaintiff's counsel analyzed the deficiency as a lack of plausibility, rather than a lack of

22   particularity.  In *Parker*, the court dismissed the claim on standing grounds because the plaintiff in

23   that case did not "plausibly allege that *he* suffered from . . . deficiencies of the software," given that

24   Plaintiff had conceded that "his computer indeed functioned poorly."  *Parker*, 2012 WL 4168837,

25   at *4.  However, because this Court finds Plaintiff has failed to satisfy Rule 9(b), it does not reach

26   the plausibility determination under Rule 12(b)(6).[3]

27   _____

28   [3]  The Court further expresses doubts as to the plausibility of Plaintiff's theory that RPC's false
     reports of errors on Plaintiff's computer induced her to purchase the software.  The complaint
     alleges that RPC's "error detection and reporting procedures are simply a façade to frighten

15

Case No.: 12-CV-04589-LHK
ORDER GRANTING MOTION TO DISMISS

1         In sum, the Court GRANTS McAfee's motion to dismiss because neither Plaintiff's

2    allegations regarding the alleged representations on McAfee's website, nor Plaintiff's allegations of

3    RPC's alleged false reporting have satisfied the particularity requirement of Rule 9(b).  Moreover,

4    the Court finds that these deficiencies are not specific to Defendant McAfee.  Rather, the lack of

5    particularity applies equally to Plaintiff's claims against Defendant Capital Intellect.  Accordingly,

6    the Court dismisses this action in its entirety.  *See Silverton v. Dep't of the Treasury*, 644 F.2d

7    1341, 1345 (9th Cir. 1981) (A court "may properly on its own motion dismiss an action as to

8    defendants who have not moved to dismiss where such defendants are in a position similar to that

9    of moving defendants or where claims against such defendants are integrally related."); *Abaghinin*

10   *v. Amvac Chem. Corp.,* 545 F.3d 733, 742–743 (9th Cir. 2008) ("[W]e have upheld dismissal with

11   prejudice in favor of a party which had not appeared, on the basis of facts presented by other

12   defendants which had appeared.").

13        However, because the Court's dismissal is based on insufficiently particular pleading as

14   discussed above, rather than on the inherent futility of Plaintiff's claims, the Court grants leave to

15   amend within 30 days.  *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (noting that leave

16   to amend under Rule 15(a) "shall be freely given when justice so requires.").

17       **C.**    **McAfee's Objections to Plaintiff's Specific Causes of Action**

18        McAfee has also raised a series of specific objections to Plaintiff's individual claims: (1)

19   the inapplicability of California statutes; (2) failure to allege breach of express warranty; (3) failure

20   to allege breach of contract claims; and (4) failure to cite a separate claim in breach of the implied

21   covenant of good faith and fair dealing. [4]  The Court addresses each in turn.

22   consumers into purchasing the full version of the software." Compl. ¶ 29.  However, in this case,
     Plaintiff had 30 days to test the full repair software prior to purchase.  *See id.* ¶ 41.  This case is

23   unlike other cases brought by Plaintiff's counsel, in which a plaintiff was only offered the allegedly
     misleading free diagnostic scan prior to purchase.  *Cf. Parker*, 2012 WL 4168837, at *2 (noting

24   that case's complaint referenced a "diagnostic 'initial scan,' performed prior to purchase," which
     did not apply to plaintiff, and appeared to have been mistakenly copied and pasted from another

25   complaint).  An amended complaint that seeks to pursue a theory of liability based on the
     software's representations on Plaintiff's computer must allege facts explaining why an anti-virus

26   computer repair software that continuously reported critical errors would induce Plaintiff to keep
     the program beyond the 30-day trial period.

27   [4]  McAfee does not explicitly challenge Plaintiff's request for "damages, including statutory and
     punitive damages where applicable."  Compl. at 19.  However, the Court notes that non-

28   restitutionary damages are not available under California's Unfair Competition Law.  *See Korea*

Case No.: 12-CV-04589-LHK
ORDER GRANTING MOTION TO DISMISS

### 1.   Applicability of California Statutes

McAfee challenges Plaintiff's ability to bring suit under Cal Bus. & Prof. Code § 17200, California's Unfair Competition Law ("UCL"), which prohibits "any unlawful, unfair, or fraudulent business or practice."  Plaintiff alleges that McAfee violated § 17200 by (1) misrepresenting the software to consumers, (2) misrepresenting the results of diagnostic scans to consumers, (3) scaring consumers with false scan results for the purpose of tricking them into using and purchasing their software, (4) breaching its express warranties in violation of California Commercial Code § 2313, and (5) selling software that lacks advertised utility.  *See* Compl. ¶ 58. McAfee argues that Plaintiff's California statutory claims should be dismissed because Plaintiff is not a California resident and the conduct at issue, namely misrepresentations within RPC itself, occurred outside of the State because RPC was developed in the Boston area.  *See* Mot. 9–10 (citing Compl. ¶¶11, 18).

Neither party contests that "[s]tate statutory remedies under the  . . .UCL may be available to non-California residents if those persons are harmed by wrongful conduct occurring in California.  *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 916 (C.D. Cal. 2011) (citing both *Wershba v. Apple Computer, Inc.,* 91 Cal. App. 4th 224, 242 (2001), and *Norwest Mortg., Inc. v. Superior Court,* 72 Cal. App. 4th 214, 224–25 (1999)).  *See also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008) ("[E]xtraterritorial application of the UCL is not barred where the alleged wrongful conduct occurred in California.").  In fact, McAfee concedes that "the statements on its website could . . . be the source of California liability."  Reply at 9.  Rather, McAfee argues only that these statements cannot be the source of Plaintiff's liability *in this case*, because Plaintiff's claims "are based on the supposedly inaccurate report produced by Capital's

---

*Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45 (2003).  Furthermore, under Cal. Civ. Code § 3294, a court may impose punitive damages only "in an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant is guilty of oppression, fraud, or malice."  Absent an independent tort, punitive damages "may not be awarded for breach of contract even if the defendant's conduct in breach of the contract was willful, fraudulent, or malicious."  *Brewer v. Premier Golf Prof., LP*, 168 Cal. 4th 1243, 1255–56 (1994).  *See also 20 Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516 (1994) (discussing statutory rule that punitive damages are *per se* not recoverable in ordinary actions for breach of contract).  If Plaintiff seeks punitive damages in her amended complaint, she must explain which of her causes of action purportedly provide for punitive damages.

Case No.: 12-CV-04589-LHK
ORDER GRANTING MOTION TO DISMISS

1   software, *not* anything McAfee said or did in California." *Id.*

2       While the Court has dismissed Plaintiff's complaint for failure to comply with Rule 9(b),

3   Plaintiff's first theory of liability is premised on McAfee's alleged misrepresentations on its

4   website, which McAfee concedes could be the source of California liability. If Plaintiff's amended

5   complaint properly pleads these allegations pursuant to Rule 9(b), McAfee has presented no reason

6   that California statutes should not apply.[5] The Court does not reach the applicability of California

7   statutes to Capital Intellect, who has not yet appeared in this action.

8                        **2.     Breach of Express Warranties**

9       McAfee alleges that Plaintiff's breach of warranty claim fails because McAfee denies

10  making any warranties regarding the software's ability to accurately report errors. Mot. at 11.

11  Under California law, in order to prevail on a breach of express warranty, Plaintiff must prove that

12  the seller: "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the

13  promise or description formed the basis of the bargain; (3) the express warranty was breached; and

14  (4) the breach caused injury to the plaintiff." *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp.

15  2d 929, 949 (C.D. Cal. 2012) (quoting *Alvarez v. Chevron Corp.*, 656 F.2d 925, 932 (9th Cir.

16  2011)). A buyer must also plead that notice of the alleged breach was provided to the seller within

17  a reasonable time after discovery of the breach. *See Alvarez*, 656 F.3d at 932 (quoting *Stearns v.*

18  *Select Comfort Retail Corp.,* 763 F.Supp.2d 1128, 1142 (N.D. Cal. 2010) (citations omitted). "The

19  buyer has the burden of showing that reasonable notice was provided." *Stearns*, 763 F. Supp. 2d at

20  1142 (citing *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135 (Cal Ct.

21  ─────────────────────

22  [5] However, the Court notes that, addressing the applicability of California's UCL in one of
    Plaintiff's counsel's parallel suits, the *Gross* Court specifically required that a plaintiff's amended
    complaint should allege that the defendant's sales and marketing departments operate out of its
23  California offices, because the complaint alleged fraud based on the sales and marketing of the
    software at issue. *See Gross v. Symantec Corp.*, No. 12-00154, 2012 WL 3116158, at *8 (N.D. Cal.
24  July 31, 2012)(citing *Badella v. Deniro Mktg. LLC.*, No. 10-3908, 2011 WL 5358400, at *9, *11
    (N.D. Cal. Nov. 4, 2011)). In this case, Plaintiff has represented to the Court that she has already
25  made such an allegation, stating that "Plaintiff alleges that McAfee's headquarters and primary
    sales and marketing operations are located in California." Opp'n at 13 (citing Compl. ¶ 10).
26  Although McAfee did not challenge this characterization, in fact Paragraph 10 of the complaint
    states only that McAfee's headquarters and principal place of business are in California, and that
27  McAfee does business throughout the United States. Compl. ¶ 10. Plaintiff is advised that her
    amended complaint should make explicit what conduct allegedly occurred in California.

28

Case No.: 12-CV-04589-LHK
ORDER GRANTING MOTION TO DISMISS

1   App. 2008)).

2         The Court notes that Plaintiff provides no facts demonstrating that she gave any notice of

3   the alleged breach to the seller within a reasonable time after discovering the alleged breach or

4   complained to McAfee prior to filing suit.  *See Alvarez*, 656 F.3d at 932.  Plaintiff's amended

5   complaint should address this deficiency.

6                        **3.     Breach of Contract**

7         Plaintiff's fourth claim alleges breach of contract, alleging that "Defendants voluntarily

8   assumed [] contractual obligation to honestly and accurately inform [Plaintiff] about the true

9   condition of [her] computer," and subsequently breached this obligation.  *Id.* ¶¶ 85–87.  Generally,

10  to state a claim for breach of contract, "a plaintiff must plead the existence of a contract, his

11  performance of the contract or excuse for nonperformance, the defendant's breach and resulting

12  damages."  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 916, 930 (N.D. Cal. 2012) (citing *Otworth v.*

13  *Southern Pac. Transp. Co.*, 166 Cal. App. 3d 452, 458 (1985)).  To properly plead these elements,

14  "[t]he complaint must identify the specific provision of the contract allegedly breached by the

15  defendant."  *Id.* (citing *Progressive West Ins. Co. v. Superior Court*, 135 Cal. App. 4th 263, 281

16  (2005)).

17        In this case, Plaintiff's breach of contract claim fails to identify in what contract

18  "Defendants" assumed the obligation to "honestly and accurately inform [her] about the true

19  condition of [her] computer," much less identify the specific provisions of this contract.  Compl. ¶¶

20  85–87.  *Cf. McAfee v. Francis*, No.11-00821, 2011 WL 3293759, at *2 (dismissing breach of

21  contract claims for failure to attach copies of the alleged contract to the Complaint, or plead the

22  essential terms of the agreement, or the date of the contract).  Furthermore, Plaintiff fails to allege a

23  breach for the same reasons her claims fail to satisfy the Rule 9(b) standard: Plaintiff does not offer

24  sufficient factual allegations to establish either what representations were made on McAfee's

25  website, or that RPC falsely reported errors on Plaintiff's own computer.  Any amended complaint

26  by Plaintiff alleging this cause of action must identify the essential terms of the agreement and

27  specific allegations of breach.

28                  **4.     Breach of the Implied Covenant of Good Faith and Fair Dealing**

19

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1    Plaintiff's fifth claim alleges breach of the implied covenant of good faith and fair dealing.

2 The implied covenant of good faith and fair dealing "rests upon the existence of *some specific*

3 *contractual obligation . . .* [and] the implied covenant is limited to ensuring compliance with the

4 express terms in the contract, and cannot be extended to create obligations not contemplated in the

5 contract." *Racine & Laramie, Ltd. v. Cal. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026,

6 1031–32 (1992).  As discussed above, Plaintiff has failed to identify the express terms of her

7 alleged contract, much less which specific provisions were the basis of Defendants' alleged breach

8 of the implied covenant.  *See Edejer v. DHI Mortg. Co.*, No. 09-1302, 2009 WL 1684714, at *9

9 (N.D. Cal. June 12, 2009) ("To establish a breach of an implied covenant of good faith and fair

10 dealing, a plaintiff must establish the existence of a contractual obligation.").

11    Furthermore, Plaintiff's allegations of a breach of the implied covenant are identical to her

12 breach of contract allegations, relying on the same alleged acts, and may thus be "disregarded as

13 superfluous."  *Zepeda v. PayPal, Inc.*, 777 F. Supp.2d 1215, 1221 (N.D. Cal. 2011) (citing

14 *Malcolm v. JPMorgan Chase Bank, N.A.*, No. 09–4496, 2010 WL 9434252, at *6 (N.D. Cal. Mar.

15 15, 2010)) (dismissing plaintiff's cause of action for breach of implied covenant because the

16 supporting allegations were the same as those alleged for their breach of contract claim, even

17 though the breach of contract claim was dismissed for failure to state a claim).  Here, Plaintiff

18 alleges that Defendants breached both the contract and the implied covenant of good faith and fair

19 dealing by failing to "provide software that could honestly and accurately inform [consumers]

20 about the true condition of their computers" and otherwise "[failing] to offer the level of utility

21 promised by Defendants."  *See* Compl. ¶¶87, 97.  Because Plaintiff's allegations for the two causes

22 of action are entirely coincident, Plaintiff's breach of implied covenant claim is superfluous.

23    Plaintiff, noting that California state and federal courts recognize a "bad faith" exception to

24 this rule, contends that her distinct breach of implied covenant claim can survive because McAfee

25 "acted in bad faith to frustrate the contract's benefits."  Opp'n 16-17 (citing *Guz v. Bechtel Nat'l,*

26 *Inc.*, 24 Cal. 4th 317, 353 n. 18 (2000); *Lamke v. Sunstate Equip. Co., LLC*, No. 03-4956, 2004 WL

27 2125869 (N.D. Cal. Sept. 22, 2004); *Shaterian v. Wells Fargo Bank, N.A.*, No. 11-00920, 2011 WL

28 5358751, at *8 (N.D. Cal. Nov. 7, 2011)).  However, Plaintiff fails to recognize that this exception

20

applies where a plaintiff acted in bad faith to frustrate the contract's actual benefits, and does not extend to allegations of a defendant's bad faith in inducing a plaintiff to enter a contract. *See Shaterian*, 829 F. Supp. 2d at 884 (distinguishing between "actions presumably taken to induce [contract formation]" and those taken "to frustrate the benefits of the contract"); *see also Gross*, 2012 WL 3116158, at *12–13. Because the complaint only alleges representations made by Defendants to induce keeping RPC beyond the 30-day free trial period, the only alleged bad faith relates to inducement to enter into the contract, not frustration of the benefits of the contract. Accordingly, any amended complaint seeking to pursue this cause of action must allege either facts beyond those establishing breach of contract, or allegations of bad faith in frustrating the benefits of the contract.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS McAfee's motion to dismiss as against both Defendants. All the claims are dismissed without prejudice. Should Plaintiff elect to file an amended complaint curing the deficiencies discussed herein, she shall do so within 30 days of the date of this Order. Failure to meet the 30-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice. Plaintiffs may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: June 24, 2013

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

Case No.: 12-CV-04589-LHK
ORDER GRANTING MOTION TO DISMISS